**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

GLENN E. BLANTON,  :

          Plaintiff,

  -vs-

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY[1],

          Defendant.  :

Case No. 3:06-cv-379

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

---

[1] The Court notes that on February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. See, http://www.ssa.gov/pressoffice/pr/astrue-pr.htm. In accordance with Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as Defendant in this action. However, in accordance with the practice of this Court, the caption remains the same.

389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. §423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on July 21, 2003, alleging disability from April 4, 2003, due to high sugar and back problems. (Tr. 46-48; 62-68). Plaintiff's application was denied initially and on reconsideration. (Tr. 28-31; 33-35). A hearing was held before Administrative Law Judge James Knapp, (Tr. 165-86), who determined that Plaintiff was not disabled. (Tr. 11-21). The Appeals Council denied Plaintiff's request for review, (Tr. 3-6), and Judge Knapp's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Knapp found that Plaintiff has severe mild lumbar degenerative disc disease and, since October, 2004, untreated carpal tunnel

3

syndrome, but that he does not have an impairment or combination of impairments that equals or meets the Listings. (Tr. 20, findings 3, 4). *Id.* Judge Knapp also found that Plaintiff lacks [sic] the residual functioning capacity to lift 25 pounds frequently or 50 pounds maximum, and, since October, 2004, do constant fine fingering.[2] *Id.*, finding 6. Judge Knapp then found that Plaintiff is able to perform his past relevant work as a truck driver as such work is customarily done in the national economy. *Id.*, finding 7. Judge Knapp concluded that Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 21).

   The record reveals that Plaintiff received occasional chiropractic treatment for lumbosacral facet syndrome from chiropractor Jeffrey Brockert. (Tr. 84-89). On August 7, 2003, Dr. Brockert reported that Plaintiff's abilities to perform physical activities were "ok." *Id.*

   Examining physician Dr. Oza reported on October 27, 2003, that Plaintiff was diagnosed with diabetes four years ago, that he has had problems with a lazy right eye since birth, and that his main complaint was pain in his low back since the 1980s. (Tr. 90). Dr. Oza also reported that Plaintiff's review of systems was negative, that his grip strength was strong and symmetrical bilaterally, his ranges of motion at his wrists, elbows, and shoulders were full, that he had no neurosensory deficits, that there was some tenderness on palpation of the lower spine, that on straight leg raising he could raise up to 60 degrees without any problems, that he complained of pulling in his back muscles, and that ranges of motion at his hips towards the extremes was somewhat painful. *Id.* Dr. Oza noted that Plaintiff's sensory exam to pin-prick, touch, and vibration

---

[2] As Plaintiff notes in his Memorandum in Support of his Statement of Errors, Judge Knapp's finding that Plaintiff "lacks" the residual functional capacity to lift 25 pounds frequently or 50 pounds maximum suggests that Plaintiff is not able to perform medium work. (Doc. 7 at 2 n. 2). However, as Plaintiff also notes, this was probably a typographical error since elsewhere in the record, Judge Knapp stated that Plaintiff retained the ability to perform medium work. *Id.*

were intact, that his reflexes were 2+ and symmetrical, that he had a normal gait and that his ranges of motion of his lumbosacral spine were very mildly reduced. *Id.* Dr. Oza's impression was that Plaintiff had a history of diabetes and hyperlipidemia, both of which seemed to be under control, that he had symptoms suggestive of peripheral neuropathy, but had no clinical findings yet, that clinically there was no evidence of lumbar radiculopathy, and that he would need a work-up for sleep apnea. *Id.* Dr. Oza opined that work related activities could be performed if Plaintiff could move around every few minutes and change his position and if he did not have to lift, bend, or stoop. *Id.* An x-ray of Plaintiff's lumbar spine performed in conjunction with Dr. Oza's examination revealed multi-level spondylosis and mild intervertebral disc space narrowing at L5-6 and L6-S1, and mild lateral compression to L3-L5 developing. *Id.*

The record reveals that Plaintiff received treatment from chiropractor Dr. Lee during the period January 15, 2003, to December 25, 2004. (Tr. 119-27). Dr. Lee's records reflect that he treated Plaintiff for cervical sprain/strain, lumbar sprain/strain, and thoracic myositis. *Id.* On June 25, 2004, Dr. Lee reported that Plaintiff was able to sit for two hours, stand and walk each for one hour, sit/stand/walk for three hours, lift and carry up to 10 pounds occasionally, and that he was able to perform part-time sedentary work and no light work. *Id.*

Plaintiff consulted with orthopedist Dr. Kim in September, 2004. (Tr. 128-33). Dr. Kim determined that Plaintiff had possible carpal tunnel syndrome and/or diabetic peripheral neuropathy, that he had no muscle atrophy in either hand, that his sensation was intact to light touch and pin-prick, that his radial and ulnar pulses were palpable and that he had a positive Tinel at the carpal tunnel bilaterally, eliciting paresthesias radiating to the thumb, index, and long fingers. *Id.* On October 5, 2004, EMG confirmed Dr. Kim's diagnosis of carpal tunnel syndrome and on

November 1, 2004, Dr. Lee performed a carpal tunnel injections bilaterally. *Id.*

The record contains a copy of the treatment notes of Dr. Derksen who has been Plaintiff's treating physician since at least March 20, 2002. (Tr. 134-56). During the period March 20, 2002, through November 15, 2004, Dr. Derksen treated Plaintiff for various complaints and medical conditions including chest wall strain, carpal tunnel syndrome, diabetes, sore throat, cough, and hypercolesterolemia. *Id.* On November 11, 2004, Dr. Derksen reported that Plaintiff was able to sit for two hours, stand for 30 minutes, walk for 15 minutes, alternately sit/stand/walk for three hours, lift and carry up to 10 pounds occasionally, and that he was able to do part-time sedentary work, but that he was not able to perform any light work. *Id.*

The record contains copies of additional treatment notes from Dr. Derksen dated November 15, 2004, through April 4, 2005. (Tr. 157-160). Those treatment notes reveal that Dr. Derksen continued to provide Plaintiff with general medical care. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by rejecting the opinions of Drs. Derksen and Lee and by improperly evaluating his carpal tunnel syndrome and peripheral neuropathy. (Doc. 7).

A treating physician's opinion is entitled to weight substantially greater than that of either a nonexamining medical advisor or an examining physician who saw a claimant only once. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* ___ F.3d ___, ___, 2007 WL 1501302, (6th Cir. May 27, 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). However, a treating physician's statement that a claimant is disabled

6

is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997).

A chiropractor is not an acceptable source of medical evidence. 20 C.F.R. §§404.1513; 416.913. The Commissioner is not required to give controlling weight to a chiropractor's opinion nor is he required to adopt a chiropractor's opinion. *Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997); *Lucido v. Commissioner of Social Security,* No. 03-3713, 2005 WL 221528 at * 2 (6th Cir. Jan. 31, 2005).

In rejecting Dr. Lee's opinion, Judge Knapp noted that Dr. Lee is a chiropractor and therefore, is not an acceptable medical source. (Tr. 18). Therefore Judge Knapp correctly

determined that Dr. Lee's opinion was not entitled to controlling, or even any special, weight.

Judge Knapp noted that Dr. Derksen's opinion was inconsistent with his clinical notes. In addition, Judge Knapp found that Dr. Derksen's opinion was not entitled to great weight because it was not supported by his objective clinical findings and was inconsistent with other evidence of record. Although Dr. Derksen essentially opined in November, 2004, that Plaintiff's abilities to perform work-related activities were inconsistent with performing substantial gainful activity and that he was capable of, at best, performing only part-time sedentary work, on March 1, 2005, Dr. Derkson noted that he was performing a "work PE" for Plaintiff who would be "instructing apprentice drivers", and he opined that Plaintiff was "OK for work". (Tr. 159). Further, a review of Dr. Derksen's clinical notes reveal that he reported few positive clinical findings including "some" chest wall tenderness, a positive Tinel's sign at the wrist, and tenderness of the left mid-heel. (Tr. 134-60).

Dr. Derksen's opinion is also inconsistent with the clinical findings which Dr. Oza reported. Specifically, Dr. Oza noted that Plaintiff had no neurosensory deficits and a negative straight leg raising up to 60 degrees, that his lumbar ranges of motion were, at worst, very mildly decreased, his gait was normal, and that he had only "some" tenderness of his lower back. Additionally, Dr. Oza noted that there was no evidence of lumbar radiculopathy.

Under these facts, the Commissioner did not err by rejecting Dr. Lee's or Dr. Derksen's opinions. In addition, the Commissioner did not err in finding that Plaintiff is capable of performing a range of medium work, particularly in light of the few objective clinical findings in the record as well as Dr. Derksen's note that Plaintiff was "OK for work".

Plaintiff argues next that the Commissioner erred in his evaluation of Plaintiff's

8

carpal tunnel and peripheral neuropathy. In support of that argument, Plaintiff relies primarily on his own subjective complaints and allegations.

The record establishes, as Judge Knapp found, that Plaintiff has carpal tunnel syndrome. However, Dr. Kim, who evaluated and treated with injections Plaintiff's carpal tunnel, reported that although Plaintiff had a positive Tinel's sign, he had no muscle atrophy, that his sensory examination was normal, that he had no motor deficit, and that he had a negative elbow flexion test. The only restriction which Dr. Kim described was that Plaintiff should avoid prolonged or repetitive wrist dorsi and volar flexion. (Tr. 133). Indeed, Judge Knapp included in his hypothetical question to the VE the limitation of no constant use of the hands for fingering and fine manipulation, a limitation consistent with Dr. Kim's conclusions.[3] (Tr. 181).

Plaintiff also argues that the Commissioner erred by failing to find that he is disabled pursuant to the Grid. Specifically, Plaintiff's position is that the Commissioner should have found him disabled under section 202.06 of the Grid. Plaintiff's argument is not well taken for two (2) reasons. First, the Commissioner decided the case at step four (4) of the sequential evaluation process; that is, the Commissioner determined that Plaintiff is capable of performing his past relevant work as a truck driver. Therefore, the Commissioner was not required to address the issue of disability under the Grid which is the fifth step of the process. Second, section 202.06 of the Grid is applicable to an individual who is capable of performing, at best, light work. As noted above, the Commissioner found that Plaintiff is capable of performing a range of medium work and that his finding is supported by substantial evidence. Therefore, assuming that the Commissioner were to reach the fifth step, sections 203.14 through 203.17 of the Grid would direct a finding of "not

---

[3] As an aside, the Court notes that when asked to consider an additional limitation of no constant use of the hands for gross manipulation or handling, the VE identified a significant number of medium jobs in the economy.

disabled" for an individual with a vocational background similar to Plaintiff's and who is capable of performing medium work.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."  *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

June 8, 2007.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).